# ARKANSAS GAME & FISH COMMISSION
## *v.* LINDSEY

89-18                                     771 S.W.2d 769

Supreme Court of Arkansas
Opinion delivered June 26, 1989

*Howell, Price, Trice, Basham & Hope, P.A.*, by: *Carey E. Basham* and *Dale Price*; *P. Douglas Mays*, General Counsel, Arkansas Game & Fish Commission, for appellant.

*Larry E. Graddy*, for appellee.

JOHN I. PURTLE, Justice. Upon petition by the appellee, the Faulkner County Court granted a right of private roadway across the property of the appellant. The matter was appealed to the Circuit Court of Faulkner County, which affirmed the action of the county court. The appellant raises four points for reversal: (1) that the civil action against the state is prohibited by article 5, § 20 of the Arkansas Constitution; (2) that Ark. Code Ann. § 27-66-401 (1987) is inapplicable against the state; (3) that the decision of this court in a previous appeal is res judicata; and (4) that the trial court erred in failing to allow Robert Palmer to testify as to the value of the land taken for the roadway. Finding merit in the fourth argument, the case will be reversed and remanded for the purpose of determining the amount of damages which the appellant has sustained by reason of the establishment of the roadway.

The right to use this roadway was before us in the case of *Arkansas Game & Fish Commission* v. *Lindsey, et al.*, 292 Ark. 314, 730 S.W.2d 474 (1987) (*Lindsey I*). That case was heard on appeal from a decision of the Chancery Court of Faulkner County. The chancellor had enjoined the appellant from interfering with the right to travel a public roadway. The opinion of this court declared that a portion of the roadway was not a public road.

The dispute then moved into the County Court of Faulkner County when Thomas E. Lindsey, Alfred Peaks, C.W. Elrod, Douglas J. Mathis, James D. Denton, Donna Denton, James E. Mitchell, Billy W. Russell, Homer Rabjohn, and Ollie Rabjohn petitioned to have the county court declare a private roadway across the appellant's property from the Saltillo Road to the Green's Lake road. The petition stated that the property owned by the petitioners was inaccessible without a road across the Game & Fish Commission property.

The county court appointed viewers who caused the roadway to be surveyed and who presented their estimate of damages. It was the opinion of the viewers that the appellant suffered damages in the amount of $2,727.00. The county court's order was appealed to the circuit court where the judgment was affirmed.

A more complete statement of the facts of this case may be found in *Lindsey I.* We briefly state that the Game & Fish Commission has held title to this property for some forty years. Over the years the site of this roadway has been utilized by various people, including the petitioners. There is no other feasible way to reach the appellee's property than across the roadway here in question. *Lindsey I* resulted from the blockading by the Game & Fish Commission of this same road after it had been improved by three of the appellees, who intended to sell lots on the edge of Lake Conway. The three appellees in *Lindsey I* are among the appellees in the present case.

The appellant's first argument is that the sovereign immunity of the state of Arkansas prohibits this action from being pursued against the state. Article 5, § 20 of the Constitution of the State of Arkansas provides:

> The state of Arkansas shall never be made a defendant in any of her courts.

This section does not prohibit the state from waiving immunity or voluntarily entering its appearance. In *Lindsey I* the Commission voluntarily entered its appearance and sought affirmative relief. Having entered its appearance on this matter in the Faulkner County Chancery Court proceeding the Commission cannot at this time claim sovereign immunity. We held in *Arkansas Game & Fish Commission* v. *Parker*, 248 Ark. 526, 453 S.W.2d 30 (1970), that the Game & Fish Commission was under no obligation to appear and defend a cause of action, but upon voluntarily doing so, it became bound by the decree of judgment like any other person.

Amendment 35 to the Constitution of the state of Arkansas grants to the Game & Fish Commission rather broad authority to manage lands and to regulate the preservation and harvesting of game and fish. However, the Commission cannot use its authority to deny the constitutional rights of others. This court has previously considered the possible conflict between Amendment 35 and article 2, § 22 of the Constitution. In *Shellnut* v. *Arkansas State Game & Fish Commission*, 222 Ark. 25, 258 S.W.2d 570 (1953), we held that the Commission could not promulgate a regulation which in effect took property (hunting rights) from the appellant in violation of the guarantee of property rights under

article 2, § 22 of the Arkansas Constitution. Shellnut instituted a proceeding against the Game & Fish Commission in the Chancery Court of Pulaski County. The opinion stated: "Even though Constitutional Amendment No. 35 gives broad powers to the Commission, nevertheless, the Commission is subservient to, and bound by, Art. 2, § 22 of the Constitution. . . ." The court stated that "[i]t is only necessary that there be such serious interruption of the common and necessary use of the property as to interfere with the rights of the owner."

A case closer to the one before us is that of *Arkansas State Game & Fish Commission* v. *Eubank*, 256 Ark. 930, 512 S.W.2d 540 (1974), where we stated:

> First we observe that appellant is incorrect in its assertion that it cannot be the subject of a suit in our courts. A state agency may be enjoined in a suit in equity if it can be shown the pending action of the agency is *ultra vires* or without the authority of the agency.

The opinion further stated that an agency of the state can be enjoined when it is about to act in bad faith, arbitrarily, capriciously, and in a wantonly injurious manner.

The public had traveled across the lands here in question for many years before the Commission acquired title to the property. There is no indication that the Commission ever exercised exclusive control over this road until after the appellees had improved it in preparation for a business venture on their land. When the Commission erected a barricade, Lindsey and his business partners went to chancery court and obtained an injunction against the Commission from closing the road. This court reversed because we determined that a part of the road was not a public road. Lindsey and his associates, and the other appellees, proceeded in the county court to condemn a roadway across the Commission property. This action was the result of the Game & Fish Commission exercising dominion over the roadway. It was not revealed whether the appellees had prior knowledge that the Commission claimed the exclusive right to the use of this roadway. The action of the Game & Fish Commission in this case is much like that in the *Shellnut* case. The action of the Commission in cutting off travel across the road is the act which precipitated this lawsuit.

In *Arkansas State Highway Commission* v. *Union Planters National Bank*, 231 Ark. 907, 333 S.W.2d 904 (1960), we quoted from *Pennsylvania Coal Co.* v. *Mahon*, 260 U.S. 393 (1922):

> "The general rule at least is, that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking. . . . We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change."

In *Foster d/b/a Foster's Salvage Yard* v. *Arkansas State Highway Commission*, 258 Ark. 176, 527 S.W.2d 601 (1975), we stated: "Regulation which unduly invades this right runs afoul of constitutional due process requirements and prohibitions against the taking of private property without just compensation." See *Arkansas State Highway Commission* v. *Turk's Auto Corp., Inc.*, 254 Ark. 67, 491 S.W.2d 387 (1972).

The appellant's second argument is that the circuit court did not have the authority to establish a roadway over property owned by the state and under the exclusive jurisdiction and control of the Arkansas Game & Fish Commission. This argument has been covered in the discussion of the first argument and will not be repeated.

The third argument is that the appellees are barred by the doctrine of res judicata. Only three of the ten appellees were parties to the first action. The chancery court did not have jurisdiction to lay out and establish private roads as sought in the present action. Neither could the county court issue an injunction as requested in *Lindsey I.* Generally speaking, res judicata "applies when there has been a final adjudication on the merits of an issue, without fraud or collusion, by a court of competent jurisdiction, on the matters litigated *or which might have been litigated.*" (Emphasis in original.) *Taggart* v. *Moore*, 292 Ark. 168, 729 S.W.2d 7 (1987). Here there was no final adjudication by a court of competent jurisdiction on the matter of whether the county could lay out a road under the provisions of Ark. Code Ann. § 27-66-401. There are several parties in this action who were not parties to the first action and apparently had no notice that it was being tried in the courts. Therefore, the doctrine of res

judicata does not preclude the present action.

The fourth and final argument is that the court erred in rejecting the testimony of the appellant's witness concerning the damages for the right-of-way established by order of the county court. Although the court followed the statutory procedure for establishing the damages, it was error to refuse the appellant the right to contest the amount of damages by the viewers. The present case is unlike that of *Castleman v. Dumas*, 279 Ark. 463, 652 S.W.2d 629 (1983), where the land owner across whose land the road ran failed to produce evidence contradicting the damages established by the viewers. It would be a denial of due process to prevent the appellant from presenting evidence on the matter of damages resulting from the establishment of the right to the use of the roadway.

The law (Ark. Code Ann. § 27-66-401) provides that people who utilize this method of obtaining a roadway must compensate the property owners for damages caused by the roadway over their property. In establishing the damages, both parties must be allowed to offer evidence. The appellant, through the testimony of an expert witness, offered to submit evidence of the value of the lands before and after the establishment of the right-of-way by the county court. It should have been allowed to do so. The trial court awarded only "nuisance" damages. That was error. The landowner from whom a right of way is taken is entitled to recover for the right-of-way actually taken and, in addition, the damages, if any, to the balance of the land. *Fort Smith Light & Traction Co. v. Schulte*, 109 Ark. 575, 160 S.W. 855 (1913).

Reversed and remanded for the purpose of proceeding in a manner consistent with this opinion.

GLAZE, J., dissents.

NEWBERN, J., not participating.

HAYS, J., concurs.